**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

In re:

Fairfax Best Living, LLC,

Debtor.

Case No. 26-11985

Chapter 11

**OBJECTION TO MOTION FOR**
**TURNOVER OF PROPERTY AND BRIEF IN SUPPORT**

YSA Investments 1, LLC ("YSA"), a secured creditor of the Debtor, for its objection to the *Debtor's Amended Emergency Motion for Turnover of Property of the Estate and Brief in Support and Notice of Opportunity for Hearing and Notice of Hearing* [Doc. 34] (the "Cash Collateral Motion"), states as follows:

1. On June 12, 2026, the Debtor and a group of four related debtors filed Chapter 11 cases. Those cases include: Fairfax Investors, LLC (Case No. 26-11984); Fairfax Best Living, LLC (Case No. 26- 11985); Woodland Oaks Best Living, LLC (Case No. 26-11986); and Woodland Oaks Investors, LLC (Case No. 26-11987) (collectively referred to as the "Debtors").[1]

2. The Debtors own two multi-family apartment complexes located in Oklahoma (the "Properties"): (a) the apartment complex known as "Fairfax Apartments" or "Fairfax," located at 7801 NE 10th Street, Midwest City, Oklahoma 73110; and (b) the apartment complex known as "Woodland Oaks Apartments" or "Woodland Oaks," located at 7142 South 92nd East Avenue, Tulsa, Oklahoma 74133.

3. Each of the Debtors are entirely owned by an entity that is believed to be singularly controlled by Marc L. Kulick. [List of Equity Security Holders, Case No. 26-11984, Doc. 40 (Vesta

---

[1] Because the Debtors cases have not yet been consolidated, yet similar motions have been filed in each of the cases, a similar response is being filed in each case, with joint references to the cases' respective motions.

1

Fairfax, LLC); *see also* Case No. 26-11985, Doc. 38 (Fairfax Holding Company, LLC); Case No. 26-11986, Doc. 39 (W.O. Sole Member, LLC); Case No. 26-11987, Doc. 40 (W.O. Holding Co., LLC)]. Kulick has used these entities as "personal investment vehicles" to manage and control an interconnected and comingled web of investments. [*See* Post Trial Memorandum Opinion, Delaware Ct. of Chancery, C.A. No. 2025-1319-KSJM, at 3, 17 n.107, hereafter "Delaware Opinion" and attached as Exhibit 1].

4.     Shortly before the Debtors filed their Chapter 11 bankruptcies, a receiver was appointed over the Debtors in Oklahoma County. [Cash Collateral Motion, Doc. 33-1; *see also* No. 26-11985, Doc. 33; Case No. 26-11986, Doc. 34; Case No. 26-11987, Doc. 35 (collectively, the "Cash Collateral Motions")]. This appointment follows allegations and trial court findings that the Debtors' manager (Kulick) has developed a habit of siphoning funds for improper use. [*See id.*, Exhibits 1-4].

5.     To start, the Delaware Court of Chancery found that the Kulick, the Debtors manager and control person, has a history—and even admitted to—mismanaging, comingling, and siphoning funds, for his own personal use, from entities he controls. [*See* Delaware Opinion at 17 n.107, Exhibit 1 ("Kulick acknowledged comingling his personal funds with Vesta's to create a 'lending pool' to move cash around to pay the debts of one property with proceeds from another. YSA's forensic accountant confirmed as much, based on his limited review of Kulick's bank accounts." (citations omitted)].

6.     Kulick, along with some of his investment entities, were sued on June 25, 2026 in the District Court for the Northern District of Oklahoma for racketeering related activities, including: wire fraud, mail fraud, and money laundering. [NDOK Verified Complaint, ¶¶ 86-100, Exhibit 2]. In addition to other state law fraud claims, these claims are supported by allegations

2

and findings from a forensic accountant (American Fiduciary Services) that "found account activity 'highly correlated with classic Ponzi-like schemes and highly demonstrative of commingled sources and uses of funds.'" [*Id.* ¶ 34]. This included more than $5 million of transfers to pay for personal credit cards and automobile loans. [*Id.* ¶ 34(a)-(c)]. The investigation also revealed "up to $37,473,988 in credit-card charges with no apparent business purpose; $10,241,940 in net transfers to Kulick-controlled accounts through 93 transactions; and $4,406,608 in disbursements to Raymond James & Associates" along with other suspect transactions. [*Id.* ¶ 35].

7.      On June 12, 2026 Kulic and Vesta were sued by Fannie Mae for similar allegations in the District Court for the Western District of Oklahoma. [WDOK Complaint, <u>Exhibit 3</u>]. Fannie Mae alleges that, "Kulick and his company Vesta Realty are . . . collecting almost $2 million in rents every month" but "[t]hat money is not being used to maintain the property, make repairs, protect the tenants, or pay off liens (among other items) but presumably is being diverted for undisclosed purposes." [*Id.* ¶ 29]. The WDOK Complaint also alleges that "[Kulic] and Vesta Realty are currently defending more than 15 lawsuits that, in the aggregate, allege he owes the various plaintiffs more than $100 million . . . ." [*Id.* ¶ 29 n.1].

8.      Not only is the control person behind the Properties stealing funds and mismanaging the finances, but he is also allowing the Properties to fall into disrepair. One of Kulic's holding companies has been sued in the District Court of Payne County for nuisance and abatement, related to its management of the Remington Ranch Apartments, located in Stillwater, OK. [*See* Payne Cty. Petition, <u>Exhibit 4</u>]. In that suit, the City of Stillwater alleges that "[n]umerous complaints were filed with the City regarding the Apartments, including complaints of no water, no hot water, and no heat." [*Id.* ¶ 10]. On February 9, 2026 the "Stillwater City Council approved

a Resolution declaring the Real Property and Apartments a Public Nuisance detrimental to the health, safety, and welfare of the general public and the community and authoriz[ed] the City Manager to abate the nuisance." [*Id.* ¶ 12]. YSA is a defendant in that lawsuit as a party claiming an interest in the apartments "by virtue of a mortgage filed against the real property records . . . ." [*Id.* ¶ 6]. The deterioration of the Remington Ranch apartments is causing the value of YSA's mortgaged property to decrease in value.

9.      YSA has a mortgage on the Fairfax Best Living LLC and Fairfax Investors LLC properties, securing a principal amount of $3,280,896.43. [*See* Fairfax Mortgage at 4, Exhibit 5]. YSA has a mortgage on the Woodland Oaks Best Living LLC and Woodland Oaks Investors LLC properties, securing a principal amount of $2,231,641.27. [*See* Woodland Oaks Mortgage at 4, Exhibit 6]. Those debts remain entirely unsatisfied. [*See* Fairfax Investors Schedules at 10, Doc. 36; Fairfax Best Living Schedules at 10, Doc. 35 (representing YSA to have an unauthorized 2nd Mortgage in the amount of $1,750,000.00)].[2]

10.      Debtor moves this Court to force the Receiver to turnover property to the Debtor in Possession. [*See, e.g.*, Debtor's Amended Emergency Motion for Turnover of Property of the Estate and Brief in Support and Notice of Opportunity for Hearing and Notice of Hearing, ¶ 10, hereafter "Mtn for Turnover of Property," Case No. 26-11984, Doc. 35; *see also* Case No. 26-11985, Doc. 34; Case No. 26-11986, Doc. 35; Case No. 26-11987, Doc. 36].

11.      Debtors argue "the Properties do not suffer from a fundamental operating problem. Rather, the Properties face a capital and liquidity problem . . . ." [*Id.* ¶ 10]. This argument

---

[2] The classification of YSA's mortgages as "unauthorized" on the Fairfax schedules is clearly contradicted by the Delaware Chancery Court's determination that the YSA mortgages were valid. [Delaware Opinion at 22-23, Exhibit 1].

conveniently ignores the Properties' owner/manager's history of siphoning necessary "capital and liquidity" from the Properties.

12.     Debtor further bases its argument on facts that are defied by past performance and plainly ignores the context of this bankruptcy filing. Debtors argue that "[t]urnover will not harm creditors." [*Id.* ¶ 21]. It further argues that "[c]ontinued receivership control would impair the estates by delaying stabilization" and "fragmenting decision-making." [*Id.* ¶ 22].

13.     To the extent that the Properties can be operated at a profit, it is certainly not by Debtors, whose control person has a history of using business finances for personal use and was observed to have "lost over $1 million gambling in Las Vegas during the Vesta office retreat in 2023." [NDOK Complaint, ¶¶ 34-37, Exhibit 2].

14.     State court receivers may be "permitted to continue in possession, custody and control of the property under the supervision of [a bankruptcy] court. *In re Sundance Corp., Inc.*, 149 B.R. 641, 649 (Bankr. E.D. Wash. 1993) (citing 11 U.S.C. 543(d)). Other courts have made similar determinations, by "[p]ointing to the many instances of mismanagement by the debtor, [and] deemed it proper to allow the receiver to remain in possession." *In re Powers Aero Marine Servs., Inc.*, 42 B.R. 540, 544 (Bankr. S.D. Tex. 1984) (citing *Matter of WPAS, Inc.,* 6 B.R. 40, 44 (Bkrtcy.M.D.Fla.1980) (noting the *WPAS* Court's "conclusion that the best interests of all must be considered" and that court's determination that Code section "543(d) [is] the codification of abstention as stated in § 305"). The Southern District of New York likewise held "[t]he funds collected and held by the state court receiver, qua custodian, during the continuance of this case shall be invested by the custodian so as to yield the maximum reasonable return . . . ." *In re CCN Realty Corp.*, 19 B.R. 526, 529 (Bankr. S.D.N.Y. 1982).

15.    Furthermore, the Bankruptcy Code may not be used to further fraud, and "afford[s] relief only to an 'honest but unfortunate debtor.'" *Cf. Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). Debtors' background shows that they are anything but an honest debtor in search of a fresh start. It plainly shows the opposite, and Debtors cannot be trusted with creditors' funds.

16.    To the extent the Properties, and any related funds, may be used in this Bankruptcy, they should remain in control of the receiver.

17.    If this bankruptcy is to continue, for the immediate future, this Court should maintain the status quo and require the Properties at issue to remain in control of the receiver, and under no circumstances should they be turned over to the Debtos.

18.    This Court should not grant the Debtors the opportunity to utilize their Bankruptcy to further perpetrate a fraud on their creditors. Debtor's Motion should be denied.

Dated: July 2, 2026

Respectfully submitted,

*/s/ David R. Herber*
David R. Herber, OBA #33527
**GABLEGOTWALS**
BOK Park Plaza
499 W. Sheridan., Ste. 2200
Oklahoma City, Oklahoma 73102
(t) 405.235.5517 | (f) 405.235.2875
dherber@gablelaw.com

*Attorney for YSA Investments 1, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2nd, 2026, I electronically transmitted this filing to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Service to the ECF registrants of record.

/s/ David R. Herber
David R. Herber

4931-6926-2778, v. 3

7